UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL LEFAVE, et al.,

    Plaintiffs,

v.                                            Case No.: 8:09-CV-0432-T-27EAJ

SALAMANDER INNISBROOK, LLC,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the court are Plaintiffs' **Motion to Create a Conditional Opt-In Class and Motion to Authorize Notice to Putative Class Members** (Dkt. 18) and Defendant's **Response in Opposition** (Dkt. 24).[1]

### Background

Plaintiffs are former employees of Defendant, which owns Innisbrook Resort and Golf Club ("Innisbrook") (Dkt. 24 at 4). On February 27, 2009, Plaintiffs filed a complaint alleging that Defendants engaged in age discrimination in violation of the Florida Civil Rights Act ("FCRA") and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA") (Dkt. 2). Plaintiffs contend that following a July 2007 purchase of Innisbrook, "employees age forty and older were systematically removed from their positions" (Dkt. 18 at 7).

Plaintiffs ask the court to 1) permit this case to proceed as a conditional opt-in collective action and 2) authorize notice to all similarly situated employees forty years of age or older who

---

[1] The motion has been referred to the undersigned for a Report and Recommendation (Dkt. 25). See 28 U.S.C. § 636(b); Local Rules 6.01(b) and (c), M.D. Fla.

suffered adverse employment acts by Defendant on or after August 18, 2007. Plaintiffs' proposed class includes "any and all current and former Salamander Innisbrook, LLC employees and those who applied for jobs with Salamander who were discriminated against based on their age on or after August 18, 2007" (Dkt. 18 Ex. A).

I.     **Conditional Certification**

The ADEA, by reference to the Fair Labor Standards Act, allows for opt-in class actions under 29 U.S.C. § 216(b). Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996). An employee seeking to create an opt-in class under § 216(b) "need only show that he is suing his employer for himself and on behalf of other employees 'similarly situated.'"[2] Id. Although it is the employee's burden to demonstrate a reasonable basis for a claim of class-wide discrimination, this burden is "not heavy" and requires only "detailed allegations supported by affidavits which successfully engage [the employer's] affidavits to the contrary." Id. at 1097 (citation and internal quotation marks omitted).

The Eleventh Circuit suggests, but does not require, that district courts adopt a two-tiered approach to certification of § 216(b) opt-in classes. See Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001) (per curiam). Initially, the court should consider the available evidence, e.g., the pleadings and any affidavits, and determine whether to "conditionally" certify the class. Id. at 1218 (citation omitted). If the class is conditionally certified, notice of the action is provided to putative class members and the action proceeds collectively through discovery. Id. Once

---

[2] The Eleventh Circuit has expressly declined to define what it means to be "similarly situated" and instead has adopted an ad hoc approach of simply reviewing such determinations for abuse of discretion. See Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 & n.38 (11th Cir. 2008).

discovery has completed, however, a defendant may move for decertification of the class. Id. At that point, the court "has much more information on which to base its decision, and makes a factual determination on the similarly situated question." Id. (citation omitted).

Plaintiffs submit that conditional certification of the proposed class is warranted by the affidavits of Plaintiffs Gilda Bartunek ("Bartunek"), Peter Cipolla ("Cipolla"), Elisabeth Conrath ("Conrath"), Michael LeFave ("LeFave"), Dorothy House ("House"), and Frances Iosa ("Iosa") (collectively "Affiants") (Dkt. 18 Exs. 5-10). Affiants generally allege that, following Defendant's purchase of Innisbrook in July 2007, employees forty years of age and older were "systematically removed from their positions." Each Affiant details when and in what capacity the Affiant was employed, the Affiant's age when terminated, the reason given for the Affiant's termination, and in some instances the age of the Affiant's replacement.

Defendants counter with the affidavit of Julie Taylor Soltes ("Soltes"), Innisbrook's Director of Human Resources since July 2007 (Dkt. 24 Ex. 1). Soltes emphasizes that sixty-two percent of Innisbrook's employees are forty years of age or older. She asserts that, following Defendant's July 2007 purchase of Innisbrook, all of Innisbrook's employees were notified that they "would be expected to attain higher standards in service and performance so as to elevate Innisbrook in the eyes of the public and to contribute to its viability as a profitable business" (Id.). She reportedly ensures that any termination at Innisbrook is legitimate and "in compliance with all federal and state laws and regulations." In addition to these general allegations, Soltes discusses when and in what capacity Defendant employed Affiants and the purported bases for their terminations.

The parties dispute whether Plaintiffs are similarly situated to the potential opt-in class members. Defendant cites Stone v. First Union Corporation, 203 F.R.D. 532 (S.D. Fla. 2001), in

3

support of its argument that Plaintiffs are not similarly situated to the putative class members. In Stone, the named plaintiff sought to represent a class of 160 individuals who allegedly experienced age discrimination by their employer. Id. at 535. In determining whether the named plaintiff and the opt-in plaintiffs were similarly situated, the court considered several factors such as 1) the plaintiffs' job titles, 2) the geographic location of employment, 3) when the discrimination occurred and the decision-maker responsible for it, 4) the presence of "statistically significant" evidence of age discrimination, 5) whether the plaintiffs alleged similar discriminatory treatment, 6) the evidentiary support for the alleged discrimination, and 7) the defendant's efforts to implement a discriminatory plan. Id. at 542-43. The court concluded that allowing the collective action to proceed was inappropriate based on these factors. Id. at 543.

However, the Stone court's consideration of these factors was in the context of a motion for decertification. Id. at 534. Indeed, the court had previously approved sending notice of the action to potential class members who 1) "are or were employed by [the defendant]," 2) "were at least forty years of age while employed by [the defendant]," and 3) suffered adverse employment actions between certain dates "because they were over the age of forty." Id. at 537. Given the similarity of that class definition to the definition proposed in the instant case, Stone in fact supports conditional certification of the instant class and the provision of notice to potential class members.

Although there is no evidence regarding the positions held by the potential opt-in plaintiffs or the circumstances surrounding their terminations, the proposed opt-in class includes individuals who allegedly experienced age discrimination by Defendant at some point on or after August 18, 2007. Given the representations within the pleadings and Affiants' affidavits, Plaintiffs have satisfied the court that it is appropriate to conditionally certify the proposed opt-in class and to

4

authorize notice to other potential class members.

## II. Piggybacking

Plaintiffs contend that the opt-in plaintiffs should be permitted to "piggyback" their claims onto a June 13, 2008 charge that LeFave filed with the Equal Employment Opportunity Commission ("EEOC").[3] Defendant disagrees.

Generally, an employee seeking to sue an employer for age discrimination must first file a complaint with the EEOC. Hipp, 252 F.3d at 1217. However, an opt-in plaintiff who has not filed an EEOC charge "may 'piggyback' his claim onto the claim of a plaintiff who has filed a timely charge." Id. (citations omitted). Piggybacking is proper only where 1) the "piggybacked" charge is not invalid and 2) the claims of the EEOC-filing plaintiff and the piggybacking plaintiff "arise out of similar discriminatory treatment in the same time frame." Id. (citation and internal quotation marks omitted).

### a. Class-Wide Allegations

Defendant first contends that piggybacking would be inappropriate because LeFave's EEOC charge did not provide adequate notice of class-wide discrimination.

"To serve as the basis of an ADEA class action, the underlying EEOC charge must contain allegation(s) of class-wide discrimination." Grayson, 79 F.3d at 1107. "[T]here must be some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim, and the charge must alert the EEOC that more is alleged than an isolated act of discrimination." Id. (citation and internal quotation marks omitted).

---

[3] Although Plaintiffs have filed copies of EEOC charges by LeFave, Bartunek, Cipolla, Conrath, and Waldo Tejada (Dkt. 19), Plaintiffs argue that LeFave's EEOC charge is the representative charge (Dkt. 18 at 15).

For the most part, LeFave's EEOC charge recounts his personal experience as Defendant's employee (Dkt. 19 at 1). LeFave stated that circumstances changed following Innisbrook's purchase in July 2007, that he was terminated in March 2008 for alleged poor performance, and that he was replaced by a male in his early thirties. Nonetheless, LeFave also asserted "personal knowledge that several of [his] colleagues, ages 40 to 70 were also terminated and replaced by younger employees." Identical statements were provided in four EEOC charges subsequently filed by other Plaintiffs (Id. at 2-5).

In Grayson, a named plaintiff's EEOC charge alleged that he was demoted and that within the previous year fifteen other store managers, all age forty or older, had also been demoted. 79 F.3d at 1107. Another named plaintiff filed an EEOC charge approximately two months later asserting that "[o]ther older store managers ha[d] been demoted." Id. at 1107-08. Finally, a third named plaintiff's EEOC charge represented that at least six other store managers, each forty years of age or older, were also demoted and received a pay cut. Id. at 1108. After considering these three charges, the Eleventh Circuit agreed that the EEOC had been adequately notified of the class action being asserted. Id. at 1107.

Here, LeFave similarly represented that Defendant terminated "several of [his] colleagues, ages 40 to 70" and replaced them with younger employees. This statement was repeated in at least four other EEOC charges filed by Plaintiffs in this case. Moreover, at least four of these five charges were assigned to the same EEOC investigator (Dkt. 24 Exs. 2-5). The EEOC's receipt of five charges each alleging multiple instances of age discrimination by Defendant put the EEOC on notice that LeFave was alleging more than an isolated act of discrimination. Consequently, LeFave's EEOC charge may properly serve as the representative charge in this ADEA class action.

### b. Time Frame

Defendant next contends that piggybacking on LeFave's EEOC charge should be limited because the opt-in plaintiffs' claims do not arise out of discriminatory acts occurring in the same time frame (Dkt. 24 at 9-14).

The parties agree that, if piggybacking is allowed, the rearward-scope of any piggybacking should include claims that arose within the 300-day period before LeFave filed his EEOC charge, i.e., on or after August 18, 2007 (Dkt. 18 at 15; Dkt. 24 at 13-14). The parties disagree, however, on whether forward-scope piggybacking should be permitted. Plaintiffs maintain that Defendant has engaged in a "continuing violation" and that opt-in plaintiffs affected by this violation after LeFave filed his EEOC charge should be able to piggyback on that charge. Defendant counters that piggybacking should not be allowed for any claims premised on events occurring after LeFave's EEOC charge was filed.

Generally, "the forward scope of an opt-in class ends on the date the representative charge is filed." Hipp, 252 F.3d at 1225. This rule preserves the goal of requiring ADEA plaintiffs to file an EEOC charge and thereby put the EEOC and the employer on notice of the allegations. Id. Nonetheless, "[w]here the representative charge clearly alleges a continuing, concrete policy that is illegal . . . it might be fair to assume the company has knowledge of later-arising claims challenging the same policy." Id. at 1226.

LeFave's EEOC charge averring "personal knowledge that several of [his] colleagues, ages 40 to 70 were also terminated and replaced by younger employees" is not a clear allegation that Defendant implemented a continuing, concrete policy of age discrimination. See, e.g., Hipp, 252 F.3d at 1225 & n.20 (finding a continuing, concrete policy of discrimination was not clearly alleged

where EEOC charge "did not explicitly allege that the violation was continuing"); Grayson, 79 F.3d at 1104 (declining to allow forward scope for EEOC charge that alleged systematic violations for the previous five years but did not allege post-charge violations). Consequently, any claims that arose after LeFave filed his EEOC charge should not be permitted to piggyback on that charge. Therefore, the time frame for piggybacking onto LeFave's EEOC charge is August 18, 2007 through June 13, 2008.

## III. The Notice

Plaintiffs ask the court to adopt a proposed notice attached to their motion (Dkt. 18 Ex. 1). Defendant submits that the proposed notice should be modified and provides its own proposed notice (Dkt. 24 Ex. 6).

### a. "Composition of the Class"

Plaintiffs' proposed definition of the class includes "any and all current and former Salamander Innisbrook, LLC employees and those who applied for jobs with Salamander who were discriminated against based on their age on or after August 18, 2007." Defendant maintains that the notice should not refer to individuals who remain employed by Defendant or merely applied for a position with Defendant.

Because this suit is based on Plaintiffs' termination and replacement, Plaintiffs are not similarly situated to individuals that continue to work for Defendant or merely sought to work for Defendant. Moreover, as discussed above, the class should include only those opt-in plaintiffs with claims that arose between August 18, 2007 and June 13, 2008. Defendant's proposed modifications adequately remedy these issues and should be adopted.

### b. "Description of the Lawsuit"

Plaintiffs' proposed description of this lawsuit includes the following language:

> The plaintiffs were formerly employed by Salamander. They allege that, following Salamander's purchase of the Innisbrook Resort and Golf Club in July 2007, Defendant implemented a policy or plan to rejuvenate the resort and as a result they were discriminated against based on their age in violation of the Age Discrimination in Employment Act, the federal law that forbids employers from discriminating against employees in the workplace because of their age.

(Dkt. 18 Ex. A).

Defendant contends that "[r]ejuvenation and discrimination are completely separate and distinct things, and to link them in an official notice from this Court would tend to improperly encourage people who were separated from their employment as a result of the former to believe that they must have also been a victim of the latter" (Dkt. 24 at 16). This court agrees.

The description should be modified as suggested by Defendant, except that it should retain the clause explaining that the ADEA is "the federal law that forbids employers from discriminating against employees in the workplace because of their age."

### c. "Your Right to Participate in This Suit"

In outlining the potential opt-in plaintiffs' right to participate in this suit, Plaintiffs' proposed notice states: "If you believe that Defendant discriminated against you based on your age. . . ." Defendant requests that the phrase be modified as follows: "If you believe that you were terminated from your employment with Salamander based on your age. . . ." Defendant's proposed modification should be adopted in the notice sent to the opt-in plaintiffs.

### d. "Effect of Joining This Suit"

Plaintiffs include a provision warning the potential opt-in plaintiffs that they may "be held liable for costs associated with this lawsuit." Defendant requests that the potential opt-in plaintiffs

also be warned that they may be liable for attorneys' fees.

Although § 216(b) awards attorneys' fees to a prevailing plaintiff, there is no corresponding provision for a prevailing defendant. "The plaintiffs therefore will be liable for attorney's fees only where they have acted in bad faith, vexatiously, wantonly or for oppressive reasons." Bell v. Mynt Entm't, LLC, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (citation and internal quotation marks omitted). The notice does not need to warn the potential opt-in plaintiffs that they may be liable for attorneys' fee as well as costs.

## IV. The Consent Form

Plaintiffs also provide a proposed consent form for those opt-in plaintiffs wishing to join in this suit (Dkt. 18 Ex. 2). Defendant responds with its own modified proposal (Dkt. 24 Ex. 7).

As there will be no opt-in plaintiffs who are presently employed by Defendant or merely applied for employment with Defendant, Defendant's proposed consent form should be provided to the potential opt-in plaintiffs.

## Conclusion

Because Plaintiffs have demonstrated a reasonable basis for their claim of class-wide age discrimination by Defendant, conditional certification of Plaintiffs' proposed class is appropriate. The potential opt-in plaintiffs should be permitted to "piggyback" their claims onto LeFave's June 13, 2008 charge filed with the EEOC. However, piggybacking should be allowed only for those claims that arose between August 18, 2007 and June 13, 2008. The notice and consent forms sent to the potential opt-in plaintiffs should comply with the modifications set forth above.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) Plaintiffs' Motion to Create a Conditional Opt-In Class and Motion to Authorize

Notice to Putative Class Members (Dkt. 18) be **GRANTED IN PART AND DENIED IN PART**.

**Date: October 9, 2009**

*[signature]*
ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge